IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 4, 2021

**LAMAR HUDSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County
Nos. C1804376, 18-03030    J. Robert Carter, Jr., Judge**

_____

**No. W2020-00330-CCA-R3-PC**
_____

The Petitioner, Lamar Hudson, filed a petition for post-conviction relief challenging his guilty plea for attempted second degree murder and the resulting ten-year sentence. The post-conviction court denied relief, and the Petitioner appeals. On appeal, the Petitioner alleges that he received ineffective assistance of counsel because trial counsel failed to obtain body camera footage and that the resulting guilty plea was, therefore, entered involuntarily. After our review, we affirm the judgment of the post-conviction court denying the Petitioner relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and JILL BARTEE AYERS, J., joined.

Chloe Paulina Hawes (on appeal), and Jim Hale (at hearing), Memphis, Tennessee, for the appellant, Lamar Hudson.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Matt McLeod, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**GUILTY PLEA HEARING**

The Petitioner pled guilty to attempted second degree murder. See Tenn. Code Ann. §§ 39-12-101, -13-210. He was sentenced to a ten-year sentence to be served concurrently with his sentence in a related, federal charge of unlawful possession of a weapon to which he also pled guilty.

At the guilty plea hearing on July 12, 2018, the State stipulated that the facts at trial would have been that on August 20, 2017, the Petitioner was in an argument with his girlfriend and he hit her in the side of the head with a pistol. The victim then stabbed him twice and the Petitioner shot the victim three or four times. The victim was treated at the hospital. The Petitioner agreed to the stipulated facts. The Petitioner testified that he understood that he was waiving his right to a trial knowingly and intelligently and that he entered the guilty plea freely and voluntarily.

## POST-CONVICTION HEARING

The Petitioner filed a pro se petition seeking post-conviction relief on May 1, 2019, alleging he was denied effective assistance of counsel because trial counsel: (1) insisted he plead guilty; (2) did not inform the Petitioner that second degree murder required the intent to kill; and (3) "erroneously informed the Petitioner that Tennessee 'had no stand your ground law'." Following the appointment of post-conviction counsel, an amended petition was filed on September 27, 2019. Therein, the Petitioner further alleged that trial counsel "was provided notice of important additional discovery by Petitioner's Federal Public Defender and failed to obtain said discovery."

At the post-conviction hearing, the Petitioner testified that he recalled pleading guilty in this case on July 12, 2019. He also recalled pleading guilty in a federal criminal matter involving the unlawful possession of a weapon charge and that the sentences ran concurrently. The Petitioner recalled that trial counsel explained possible sentencing ranges based on the Petitioner's charge of attempted second degree murder, including an additional sentence of "[six] to [ten] years at [one hundred percent]" for "employing a firearm on a dangerous felony[.]" The Petitioner had been in custody since August 20, 2017, and would be eligible for parole in 2022, and he agreed that if he was granted relief on his post-conviction petition he could possibly face up to twenty-two years if found guilty at a new trial.

The Petitioner asserted that trial counsel "gave [him] some of [the] discovery." The Petitioner had been represented by attorney Serena Gray on his federal charge and she had given the Petitioner a video recording that he had not seen previously. The Petitioner recalled that he was accused of hitting the victim in the house, choking her, hitting her with a gun, following her outside and hitting her again. He testified that the victim had admitted that she stabbed the Petitioner and that the Petitioner shot the victim in return. The Petitioner averred that he shot the victim in self-defense.

A few days before trial, trial counsel approached the Petitioner with a plea offer that had been previously made and the Petitioner accepted the plea offer. The Petitioner agreed

to plead guilty to second degree attempted murder with a ten-year sentence. After entering the plea, the Petitioner began meeting with his federal public defender on his federal weapons charge and he was provided a video recording of a police officer's body camera footage of the incident. The Petitioner asserted that this video made him question if he should have taken the plea agreement. The Petitioner testified that even though the video shows the victim saying the Petitioner hit her in the head with the pistol, "no bruises, no scars" were visible on the victim. The Petitioner averred that this would have changed his plea because he "didn't hit her with [a] gun."

On cross-examination, the Petitioner agreed that he had reviewed the victim's written statement to police. The Petitioner asserted that the video showed the victim saying "that [the Petitioner] shot [the victim], and then [the victim] stabbed [the Petitioner]." The Petitioner agreed that multiple witnesses would have testified at trial that they observed the Petitioner choking the victim and following her to her car after taking the gun from the victim. Additionally, the Petitioner recalled giving a statement that he blacked out and did not remember shooting the victim.

Trial counsel testified that he worked for the Public Defender's Office ("P.D.'s Office") for almost four years. During his work at the P.D.'s Office, he routinely handled misdemeanors and felonies up to first degree murder, but not including capital cases. Trial counsel also had trial experience and had experience resolving cases before trial. He would meet with clients, review all discovery, discuss all possible options, and give professional recommendations based upon his professional knowledge and experience.

Trial counsel asserted that the video provided by Attorney Gray was not included in the discovery that he was provided by the State. However, after trial counsel's review of all discovery, he discussed a self-defense claim with the Petitioner based upon no mention of the victim suffering a head or neck injury. Additionally, trial counsel obtained the victim's medical reports which also failed to mention any significant head or neck injuries. Based upon the victim's statement to the police and her preliminary hearing testimony, trial counsel planned to use a self-defense theory at trial.

Trial counsel argued that a few ambiguities existed about the sequence of events, but "it was clear that [the victim's] statement all along had been she stabbed [the Petitioner] before he shot her." Additionally, trial counsel's impeachment strategy at trial would not have included impeaching her on this detail, because "it supported our self-defense claim" that she stabbed the Petitioner first.

Trial counsel agreed that the victim's written report and the video were substantially identical. He did assert that the video showed that the victim agreed to a misstatement of the order of events initially, but the sequence became clear when she later corrected herself.

Trial counsel described the victim in the video as "wearing her street clothes[,] blood visible, and she had a [] blue blanket on her." Trial counsel testified that the contents of the video would not have altered his advice to the Petitioner. The video was "consistent in the major details."

Trial counsel recalled advising the Petitioner of all of his rights prior to the guilty plea hearing. He specifically recalled discussing the first indictment, the superseding indictment, the self-defense claim, and explaining how the self-defense law worked. Trial counsel testified that the case was set for trial, he was prepared to go to trial, but just prior to trial the Petitioner decided to plead guilty.

On cross-examination, trial counsel testified that he never received anything that indicated that a body camera video existed. Trial counsel was aware that some police wore body cameras in 2016. He agreed that he should have asked the prosecutor if any body camera footage existed in this case. He spoke with Attorney Gray in the months before trial, but she did not mention the video.

The court denied the petition for post-conviction relief in a written order on January 31, 2020. The post-conviction court concluded that the video was not exculpatory and noted that the Petitioner pled guilty in the federal case in which he was provided this video. The post-conviction court did not find trial counsel ineffective for "not being provided" the video. The court did not find the Petitioner's testimony credible and did not find that the video would have assisted the Petitioner in any additional way as it "consiste[nt] with the facts outlined in the guilty plea." The post-conviction court found the guilty plea to be valid.

The Petitioner timely filed a notice of appeal. The case is now before us for review.

**ANALYSIS**

At the post-conviction hearing, the Petitioner argued that trial counsel was ineffective in the following ways: (1) trial counsel insisted he plead guilty; (2) he did not inform the Petitioner that second degree murder required the intent to kill; (3) he erroneously informed the Petitioner that Tennessee did not have a self-defense law; and (4) that trial counsel failed to obtain police body camera footage interviewing the victim resulting in an involuntary guilty plea. However, in his brief, he only addresses the last issue.

The State responds that the Petitioner has failed to prove that the video was exculpatory and would have changed the guilty plea and that the Petitioner should not be granted relief.

-4-

Post-conviction relief is available when a "conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. Criminal Petitioners are constitutionally guaranteed the right to effective assistance of counsel. Dellinger v. State, 279 S.W.3d 282, 293 (Tenn. 2009) (citing U.S. Const. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980)). When a claim of ineffective assistance of counsel is made under the Sixth Amendment to the United States Constitution, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness," despite the fact that reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 688-89. When a court reviews a lawyer's performance, it "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." Howell v. State, 185 S.W.3d 319, 326 (Tenn. 2006) (citing Strickland, 466 U.S. at 689). We will not deem counsel to have been ineffective merely because a different strategy or procedure might have produced a more favorable result. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991). We recognize, however, that "deference to tactical choices only applies if the choices are informed ones based upon adequate preparation." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992) (citing Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)).

As to the prejudice prong, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citing Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. "That is, the petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." Pylant v. State, 263 S.W.3d 854, 869 (Tenn. 2008) (citing State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999)). "A reasonable probability of being found guilty of a lesser charge . . . satisfies the second prong of Strickland." Id.

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Although trial counsel does not have an absolute duty to investigate particular facts or a certain line of defense, counsel does have a duty to make a reasonable investigation or to make a reasonable decision that makes a particular investigation unnecessary. Strickland, 466 U.S. at 691. Counsel is not required to interview every conceivable witness. See Hendricks v. Calderon, 70 F.3d 1032, 1040 (9th Cir. 1995). Furthermore,

> no particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel. Rather, courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential.

Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (internal citations and quotations omitted).

A reasonable investigation does not require counsel to "leave no stone unturned." Perry Anthony Cribbs v. State, No. W2006-01381-CCA-R3-PD, 2009 WL 1905454, at *49 (Tenn. Crim. App. July 1, 2009). Rather, "[r]easonableness should be guided by the circumstances of the case, including information provided by the Petitioner, conversations with the Petitioner, and consideration of readily available resources." Id. The United States Supreme Court has said, "[I]nquiry into counsel's conversations with the Petitioner may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." Strickland, 466 U.S. at 691.

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of

its consequence." <u>Boykin v. Alabama</u>, 395 U.S. 238, 243-244 (1969); <u>see</u> <u>Blankenship v. State</u>, 1858 S.W.2d 897, 904 (Tenn.1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. <u>State v. Turner</u>, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." <u>Boykin</u>, 395 U.S. at 242-43; <u>see</u> <u>Blankenship</u>, 858 S.W.2d at 904. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations ... carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).

We agree with the post-conviction court that counsel was not deficient in representation of the Petitioner. Trial counsel testified that he had no reason to know that police body camera footage existed when he did not receive a video from the discovery provided by the State. Additionally, trial counsel had been in contact with the Petitioner's federal public defender and she did not provide trial counsel the video. The record supports that trial counsel's failure to obtain the video was not deficient.

Additionally, we agree with the post-conviction court that even if the Petitioner had seen the video prior to his plea hearing, his testimony that his plea would have changed was not credible. The video showed facts that were substantially identical to that of the victim's written statement that the victim stabbed the Petitioner after he hit her, choked her, and followed her to her car. The Petitioner then shot the victim. This sequence of events was already known to the Petitioner and would have only further supported his theory of self-defense. As the post-conviction court noted, the Petitioner did not change his federal guilty plea after viewing this video and we do not find that a different result would have been achieved if he had viewed this video prior to his original guilty plea.

**CONCLUSION**

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE